IN THE COURT OF APPEALS OF TENNESSEE
AT KNOXVILLE
February 11, 2003 Session

## R. JACKSON ROSE v. RICK WELCH

**Appeal from the Circuit Court for Claiborne County**
**No. 8415    James B. Scott, Judge, by Interchange**

 **FILED MARCH 11, 2003** 

**No. E2002-02042-COA-R3-CV**

Attorney R. Jackson Rose ("Plaintiff") was hired by Rick Welch ("Defendant') to defend him on drug related criminal charges. The parties agreed to a flat fee of $25,000 for this legal representation. A retainer of $5,000 was paid up-front. Defendant signed a promissory note for the remaining $20,000. Defendant claims he lost confidence in Plaintiff's ability to adequately represent him after Defendant paid a total of $6,850 in attorney fees. Defendant discharged Plaintiff and obtained new counsel. Plaintiff sued for breach of contract. Defendant filed a counterclaim for legal malpractice and also claimed as a defense, *inter alia*, that Plaintiff's representation fell below the professional standard of care. The case was tried to a jury. After all of the proof was presented, the Trial Court directed a verdict for Plaintiff because Defendant had offered no expert proof to support his counterclaim or his defense to the breach of contract claim. We hold expert proof was not necessary in order for Defendant to prove he lost confidence in Plaintiff and discharged him with cause for that reason. We, therefore, reverse the entry of the directed verdict as to that issue only and remand the case for trial on the sole issue of termination for cause because of Defendant's "loss of confidence." We affirm all other aspects of the Trial Court's judgment.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Circuit**
**Court Affirmed in Part and Reversed in Part; Case Remanded.**

D. MICHAEL SWINEY, J., delivered the opinion of the court, in which HOUSTON M. GODDARD, P.J., and HERSCHEL P. FRANKS, J., joined.

Johnny V. Dunaway, LaFollette, Tennessee, for the Appellant Rick Welch.

Mark D. Edmonds, Johnson City, Tennessee, for the Appellee R. Jackson Rose.

## OPINION

## Background

This lawsuit involves a claim for unpaid attorney's fees. After Defendant was arrested on significant drug related offenses and criminal charges were pending in the Claiborne County Criminal Court, Defendant signed a promissory note ("Note") in the amount of $20,000 for Plaintiff to represent him in the criminal action. The Note provided for a fifteen percent attorney's fee in the event of default. When Defendant allegedly defaulted, Plaintiff brought suit on the Note claiming $18,150 still was owed. Plaintiff also sought the additional fifteen percent for attorney's fees.

Defendant filed an answer to the complaint denying he owed Plaintiff anything. Defendant asserted several defenses to the breach of contract claim, including accord and satisfaction, failure of consideration, and payment in full for services performed. Defendant also filed a counterclaim. In this counterclaim, Defendant acknowledged contracting with Plaintiff for Plaintiff to represent him in the criminal action for a set fee of $25,000. Plaintiff was paid $5,000 as a retainer and Defendant signed the Note for the remaining $20,000. Defendant claimed that after he paid Plaintiff a total of $6,850, he discharged Plaintiff as his counsel "for failure to investigate and develop his case and to perform the contracted legal services." Defendant also asserted that because Plaintiff breached the contract by not providing competent and adequate legal services, Plaintiff's fees should be limited to *quantum meruit*. Utilizing a *quantum meruit* basis for establishing fees, Defendant maintained Plaintiff actually had been overpaid and owed Defendant the return of "at least" $5,000. Defendant also alleged certain funds of his had been seized when the police raided his home and that a total of $4,232.50 had been returned.[1] Defendant claimed Plaintiff was in possession of these funds and should be required to deposit them into the registry of the court pending resolution of the various issues. In his counterclaim, Defendant sought damages of $5,000, the return of the $4,232.50, as well as attorney's fees.

In response to the counterclaim, Plaintiff denied failing to investigate properly the claim or develop the case. Plaintiff acknowledged that he possessed $4,232.50 in funds which had been returned to Defendant by the State. Plaintiff claimed, however, that he and Defendant had agreed these funds were to be applied toward Plaintiff's fees. Nevertheless, Plaintiff deposited these funds into the registry of the court until the lawsuit was resolved.

A jury trial was conducted on March 15, 2002. Plaintiff was the first witness to testify. During his testimony, Plaintiff outlined in some detail the work he did in representing Defendant on the criminal charges. For example, Plaintiff explained his successful efforts to have the bond reduced so Defendant could be released from jail. Plaintiff also detailed the steps he undertook in the partially successful effort to recover Defendant's money and property that had been

---

[1] The police confiscated $8,465 in cash during the raid. Defendant eventually entered into a compromise agreement with the State and it was agreed that one-half of these funds, or $4,232.50, would be returned to Defendant.

seized. Plaintiff also discussed his defense strategy which he maintained was discussed with and agreed to by Defendant. Plaintiff identified documents from the criminal court file as well as documents filed with the State during the process of recovering the confiscated property. Plaintiff identified a Motion to Suppress he prepared and filed in the criminal court action on Defendant's behalf in an attempt to establish the invalidity of the search warrant. Plaintiff testified to his opinion about the strong likelihood that this motion would be successful and his discussions with Defendant regarding same. According to Plaintiff, if the Motion to Suppress was granted, the criminal case against Defendant essentially would be over because all of the State's evidence would be excluded at trial.[2]

According to Plaintiff, during the course of trying to obtain the return of a truck which had been confiscated during the raid, a disagreement arose between Defendant and Defendant's ex-wife, Tammy Higdon ("Higdon"), as to who owned the truck. Plaintiff informed Defendant that he did not and could not represent Higdon in obtaining the return of the truck if there was any disagreement between them as to ownership. Plaintiff testified Defendant then told him to pursue having the truck returned to Higdon, which he did. The State agreed to return the truck to Higdon. The State also agreed to return one-half of the money and some of the other confiscated items to Defendant. When Plaintiff received a check for the funds the State had agreed to return, the check was made payable to both Plaintiff and Defendant. As stated previously, Plaintiff claims Defendant told him to apply these funds toward payment of his attorney's fees. However, when Plaintiff received the check and presented it to Defendant for endorsement, Defendant refused to sign the check until he obtained the truck from Higdon.

The majority of Plaintiff's cross-examination, as well as Defendant's direct examination, centered around what investigation was or was not undertaken, what few documents were filed in the criminal court action, and what Plaintiff allegedly did not do. The clear import of this proof was an attempt to show that Plaintiff should have done much more in the criminal court action by way of investigation, documentation, the filing of pleadings, and keeping in contact with Defendant. There also was some discontent by Defendant concerning Plaintiff's not obtaining the return of certain seized items or not obtaining them as expeditiously as Defendant thought was appropriate.

Defendant terminated the legal services of Plaintiff via letter dated July 6, 1999. This letter states, in pertinent part, as follows:

> Due to the circumstances in this case involving the 1993 Chevrolet truck and Tammy Higdon, I have decided to relieve you as my legal counsel …. I also feel there was an injustice done because I told you that the truck belonged to me not Miss Higdon. I also feel there is

---

[2] After Plaintiff was discharged, Defendant's new counsel also filed a Motion to Suppress, which set forth essentially the same arguments set forth in the motion filed by Plaintiff. The Criminal Court Judge eventually ruled that the search warrant was invalid, thereby leading to the dismissal of the criminal charges against Defendant.

another conflict of interest because you represent Barry Williams in a case where my racecar van has been seized for numerous months and you haven't tried to retrieve it. I am requesting an itemized statement of everything you have done on my behalf in both my cases so far, and I would appreciate a refund of the unused portion of these funds.…

Higdon was called as a witness at trial. Higdon testified there was never any doubt the truck actually belonged to Defendant. However, Higdon had claimed the confiscated truck (which was not titled) actually belonged to her so the State "would not keep it." In other words, Higdon claimed the truck was hers and since she was not involved in the alleged criminal activity, the truck should not have been seized and the State should give it back to her. Since the truck was returned to Higdon, we can only conclude this ruse was successful. In any event, Higdon paid Plaintiff $1,000 in attorney's fees for him to obtain the truck for her. Higdon thereafter refused to give the truck to Defendant until he reimbursed her the $1,000 in attorney's fees and the filing fee which she incurred. Once Defendant reimbursed these sums, Higdon returned the truck to Defendant.

After hearing all the proof, the Trial Court directed a verdict in favor of Plaintiff and dismissed Defendant's counterclaim. The Trial Court concluded Plaintiff had established a breach of contract. The Trial Court also concluded Defendant was required to provide expert proof regarding the professional standard of care which Plaintiff allegedly failed to meet and, without such proof, Defendant's counterclaim as well as his defense to the breach of contract claim must fail.[3] The Trial Court then concluded:

> The Court finds that the parties entered into a contract for services in the amount of $25,000.00, and that the Defendant executed a note in the amount of $20,000.00 to secure the payment of said fees. The Court further finds that the Defendant/Counter-Plaintiff is entitled to a set-off from $25,000.00 for payments made by him or on his behalf in the amount of $6,850.00, for a total of $18,150.00. The Court further finds that the Plaintiff is entitled to pre-judgment interest at the legal rate of 10% from June 28, 1999 (six months from the date of said note) which amount is $4,927.85, for a total of principal and interest as of March 15, 2002 of $23,077.85. The Court further finds that the Plaintiff is entitled to 15% attorneys fees pursuant to said note in the amount of $3,461.68.

---

[3] Defendant apparently intended on putting forth expert proof to establish the professional standard of care through testimony of the attorney who represented him in the criminal action after Plaintiff's services were terminated. However, due to an unexpected illness Defendant's second attorney was unable to testify at trial and no expert proof was offered.

The Trial Court also determined that the previously confiscated funds which had been deposited into the registry of the court should be given to Plaintiff and this sum, plus any accrued interest, should be credited against the total amount of the judgment.

Defendant appeals, raising the following issue:

> Did the Trial Court err in ruling that [Defendant] was required to present expert testimony regarding [Plaintiff's] failure to represent [Defendant] in accordance with the professional standard of care required of attorneys, and that the absence of such testimony mandated the entry of a directed verdict in favor of [Plaintiff], where [Defendant's] defenses were based on Tennessee contract law and not legal malpractice?

### Discussion

The standard of review in determining whether a trial court was correct in granting a directed verdict is set forth in *Wharton Transport Corp. v. Bridges*, 606 S.W.2d 521, 525 (Tenn. 1980):

> On review of the grant of a directed verdict on motion of a defendant, it is not the office of an appellate court to weigh the evidence. Rather, it must take the strongest legitimate view of the evidence in favor of the plaintiff, indulging in all reasonable inferences in his favor, and disregarding any evidence to the contrary. The trial judge's action may be sustained only if there is no material evidence in the record that would support a verdict for the plaintiff, under any of the theories that he has advanced.

*Id.* at 525 (quoting *Cecil v. Hardin*, 575 S.W.2d 268, 271 (Tenn.1978)).

Initially, we will discuss the propriety of the Trial Court's dismissal of Defendant's counterclaim for lack of expert proof. Defendant relies heavily on *Lewis v. Caputo*, No. E1999-01182-COA-R3-CV, 2000 Tenn. App. LEXIS 269 (Tenn. Ct. App. Apr. 28, 2000), *no appl. perm. appeal filed*, for his position that no expert proof was needed. In *Lewis*, the plaintiff sued his former attorney. The trial court dismissed the lawsuit after concluding the statute of limitations had expired, and the plaintiff appealed. The issues on appeal involved the appropriate statute of limitations for the plaintiff's various claims. After liberally construing the allegations in the complaint in the plaintiff's favor, this Court concluded two causes of action had been asserted. The first cause of action centered around plaintiff allegedly being injured by his reliance upon the defendant's faulty legal advice. *Id.* at ** 11-12. We held these allegations could fairly be read to state a claim for legal malpractice, which we observed requires a plaintiff to "prove that the attorney's conduct fell below that degree of care, skill, and diligence which is commonly possessed and exercised by attorneys

practicing in the same jurisdiction ...[and] demonstrate a nexus between the negligence and the injury." *Id*. at ** 9, 11-12 (quoting *Sanjines v. Ortwein and Associates, P.C.*, 984 S.W.2d 907, 910 (Tenn. 1998)). We also discussed the plaintiff's allegation that he was injured by the defendant's breach of contract when he failed to represent the plaintiff after incarceration. *Id*. at * 12. We concluded this allegation stated a cause of action for breach of contract and was *not* premised on a belief that the attorney had failed to adhere to the professional standard of care required of Tennessee attorneys. *Id*. A legal malpractice claim has a one year statute of limitations, regardless of whether the action is grounded in tort or contract. *See* Tenn. Code Ann. § 28-3-104(a)(2). We concluded this was the appropriate statute of limitations for the plaintiff's first claim. With regard to the plaintiff's second cause of action for breach of contract, we held this claim, which did not involve allegations of failing to adhere to the professional standard of care, was governed by the six year statute of limitations found in Tenn. Code Ann § 28-3-109(a)(3). *Lewis*, 2000 Tenn. App. LEXIS 269 at * 11-12.

Defendant's counterclaim asserts only one cause of action which he claims entitles him to an award of damages. Specifically, Defendant states: "[Plaintiff] breached his contract with [Defendant] by failing to provide competent, adequate legal services." In his brief, Defendant argues the "*Lewis* Court made it very clear that a client's cause of action against an attorney for failure to perform pursuant to his contract lies separately from an allegation of legal malpractice." We disagree with Plaintiff's interpretation of *Lewis* as applicable to this case. Defendant's denominating his counterclaim as a cause of action in tort or a breach of contract is not the critical factor here. What is determinative is Defendant's allegation that Plaintiff's conduct fell below the acceptable professional standard of care thereby resulting in injury for which Defendant seeks damages. In order for Defendant to succeed on his counterclaim, he would have to show Plaintiff's "conduct fell below that degree of care, skill, and diligence which is commonly possessed and exercised by attorneys practicing in the same jurisdiction ... [and] demonstrate a nexus between the negligence and the injury" *Lewis*, 2000 Tenn. App. LEXIS 269 at * 9 (quoting *Sanjines v. Ortwein and Associates, P.C.*, 984 S.W.2d 907, 910 (Tenn. 1998)). It is inescapable that Defendant's counterclaim asserts a cause of action for legal malpractice.

In a legal malpractice action, expert testimony is required to establish negligence and proximate cause unless the alleged malpractice is within the common knowledge of laymen. *See Bursack v. Wilson*, 982 S.W.2d 341, 343 (Tenn. Ct. App. 1998). As stated in *Cleckner v. Dale*, 719 S.W.2d 535 (Tenn. Ct. App. 1986):

> Whether a lawyer's conduct meets a particular standard of conduct is not a question of law for the court. It is a question of fact for the jury or other finder of fact to decide.… Whether a lawyer's conduct meets the applicable professional standards is generally believed to be beyond the common knowledge of laypersons. Thus, except in cases involving clear and palpable negligence, most courts considering the issue have held that cases of legal malpractice cannot be decided

without expert proof regarding the applicable standard of care and whether the lawyer's conduct complies with this standard.…

\* \* \* \*

We have determined … [t]he lawyer's standard of care, except in the most extreme cases, should be proved using expert testimony. Likewise, whether the lawyer's conduct in a given case departed from the applicable standard should also be proved by expert testimony.…

*Cleckner*, 719 S.W.2d at 540 (citations omitted).

Even assuming Defendant's testimony to be true and disregarding any contrary evidence, as we must on appeal, we conclude Defendant's allegations of Plaintiff's failure to meet a particular standard of conduct are not within the common knowledge of laymen and expert proof was, therefore, required. Defendant presented no such proof. Accordingly, the judgment of the Trial Court dismissing Defendant's counterclaim is affirmed.

Separate from the claim in Defendant's counterclaim is Defendant's defense to Plaintiff's breach of contract claim. Specifically, Defendant first asserts Plaintiff breached the contract by not complying with the appropriate professional standard of care. This differs from the malpractice claim in the counterclaim only in that Defendant is not using Plaintiff's claimed failure to comply with the standard of care as a sword, but rather as a shield to the breach of contract claim against him. Defendant claims this defense does not amount to a claim for legal malpractice because he terminated Plaintiff's services and obtained new counsel before there was any legally cognizable injury. Taking that one step further, Defendant argues since it is not a claim for malpractice, no expert proof was required.

We disagree. The critical factor as to whether Defendant needed expert proof is Defendant's allegations that Plaintiff's conduct fell below the appropriate standard of care for an attorney. Defendant's need for expert proof on this issue was triggered by Defendant's claim that Plaintiff's conduct fell below the professional standard of care, and that this alleged failure was a defense to Plaintiff's breach of contract claim. As stated above, the acceptable professional standard of care for Plaintiff is not within the common knowledge of laymen and expert proof was, therefore, required in order to establish this standard of care. The Trial Court correctly held this defense to the breach of contract claim must fail without expert proof. We affirm the judgment of the Trial Court on this issue.

Next, Defendant argues that due to the actions (or inactions) of Plaintiff, he lost confidence in Plaintiff's ability to adequately represent him. Defendant claims he had good cause to terminate the attorney-client relationship because he lost confidence in Plaintiff. According to Defendant, he did not need expert proof to establish this good cause and, therefore, the Trial Court erred in directing a verdict in favor of Plaintiff.

-7-

In Tennessee, a client has the right to discharge his or her attorney with or without cause. *Chambliss, Bahner & Crawford v. Luther*, 531 S.W.2d 108, 109 (Tenn. Ct. App. 1975). Whether or not the client had just cause to discharge his or her attorney directly impacts the potential compensation the discharged attorney may be entitled to receive for services performed. In *Adams v. Mellen*, 618 S.W.2d 485 (Tenn. Ct. App. 1981), this Court discussed the type of damages available to an attorney discharged without cause. Quoting *Brownlow v. Payne*, 2 Tenn. App. 154, 162 (1925), the *Adams* Court stated:

> Where an attorney has been discharged by his client without cause, the attorney may rescind the contract of employment and may recover on a quantum meruit for services rendered up to the date of his discharge; or he may treat the contract as continuing, although broken by the client, and may recover for the breach. According to the weight of authority, the measure of damages for such breach of contract, is the full contract price.

*Adams*, 618 S.W.2d at 488. An attorney discharged without cause can thus elect to recover based on the full contract price or on *quantum meruit*, whichever is greater.

As one might expect, the relief available to an attorney who is discharged for cause is not as favorable. When an attorney is discharged for cause, the attorney is entitled to recover on the basis of *quantum meruit* or breach of contract, *whichever is less. See Crawford v. Logan*, 656 S.W.2d 360, 364 (Tenn. 1983).[4]

Defendant argues on appeal that the Trial Court erred in directing a verdict because, in addition to the other arguments we discussed and rejected above, if Defendant fired Plaintiff because he had lost confidence in Plaintiff, that firing would have been for cause. Defendant relies upon a series of Tennessee cases concerning disagreements between an attorney and client as to whether or not to settle a lawsuit. Plaintiff argues on appeal that a client's loss of confidence in his attorney being sufficient to come within the "for cause" umbrella is limited to those disagreements between an attorney and client over a settlement in a contingency matter. We disagree with Plaintiff. We see no reason to limit this rule only to those disagreements between an attorney and client over a settlement in a contingency matter. Therefore, we hold that a "for cause" firing "includes the client's right to discharge the attorney whenever the client ceases to have absolute confidence in the relationship. *See Chambliss, Bahner*, and *Crawford v. Luther*, 531 S.W.2d 108 (Tenn. App. 1975)." *McGee v. Maynard,* No. 01-A-01-9810-CV-00539, 1999 Tenn. App. LEXIS 559 at * 4 (Tenn. Ct. App. Aug. 12, 1999), *no appl. perm. appeal filed*.

---

[4] The *Crawford* Court went on to hold that misconduct of an attorney in violation of a statute or acts against public policy, or in breach of the attorney's fiduciary duty to the client may support a complete forfeiture of fees, depending on the particular facts and circumstances of the case. *Crawford*, 656 S.W.2d at 364, 365.

The parties are also in disagreement as to whether a client's discharge of his or her attorney "for cause" because of the client's loss of confidence must be objectively reasonable. Defendant argues such a "for cause" discharge need only be subjectively reasonable, whereas Plaintiff insists it must be objectively reasonable. In the present case, if Defendant did not subjectively and actually lose confidence in Plaintiff, this absence of a loss of confidence certainly would defeat any claim that the discharge was "for cause" based on this ground. We hold that a client must first establish that the discharge was the result of his actual loss of confidence in his attorney in order to prove it was a "for cause" discharge.

The more central issue is whether a client, here the Defendant, also must prove the discharge was objectively reasonable. If an objective standard is not utilized, any client would be able to defeat a contractually agreed fee arrangement so long as the attorney is discharged for a client's loss of confidence for any reason, no matter how objectively irrational or unreasonable the stated reason for the loss of confidence may be. Such a result would, for all practical purposes, make every discharge of an attorney "for cause." We do not think this is a legally sound approach. *Cf. Video Catalog Channel, Inc. v. Blackwelder*, No. 03A01-9705-CH-00155, 1997 Tenn. App. LEXIS 636 at *6 (Tenn. Ct. App. Sept. 19, 1997), *no appl. perm. appeal filed* ("Whether good cause exists to terminate an employment contract is a determination made on a case-by-case basis, and exists where the discharge is 'objectively reasonable'"). In light of the foregoing, we hold that in order for a client, here the Defendant, to establish that he terminated his attorney's, here the Plaintiff's, services for cause because he lost confidence in his attorney, the client must prove that he actually did lose confidence in his attorney and that his reasons for the loss of confidence leading to the attorney's discharge were objectively reasonable.

Our standard of review requires us to take the strongest legitimate view of the evidence in favor of Defendant, indulging in all reasonable inferences in his favor, and disregarding any evidence to the contrary. Utilizing this standard, we believe there is material evidence in the record, even without any expert testimony having been presented, that would support a verdict for Defendant on Defendant's theory that he discharged Plaintiff with cause because he lost confidence in Plaintiff.

In summary, both Defendant's counterclaim and his defense to Plaintiff's breach of contract claim against him based upon Plaintiff's alleged failure to adhere to the professional standard of care required expert testimony to establish the acceptable professional standard of care. Defendant presented no such testimony. The Trial Court correctly directed a verdict as to Defendant's counterclaim and his defense based upon Plaintiff's alleged failure to meet the acceptable professional standard of care. However, Defendant's claim that he lost confidence in Plaintiff and fired him for that reason did not require expert testimony, and, therefore, the Trial Court erred in directing a verdict as to that issue. We remand this case for a trial on the sole issue of whether Defendant discharged Plaintiff with cause because Defendant had lost confidence in Plaintiff, and depending upon the jury's answer to that issue, the amount of damages, if any, to be awarded Plaintiff. In all other respects, the judgment of the Trial Court is affirmed.

## Conclusion

The judgment of the Trial Court is affirmed in part and reversed in part, and this cause is remanded to the Trial Court for such further proceedings as are required consistent with this Opinion. The costs on appeal are assessed one-half against the Appellant Rick Welch, and his surety, and one-half against the Appellee R. Jackson Rose.

_____
D. MICHAEL SWINEY, JUDGE