IN THE COURT OF APPEALS OF TENNESSEE
AT NASHVILLE
January 9, 2008 Session

## NANCY J. STRONG v. JOHN H. BAKER, III, ESQ., ET AL.

**Appeal from the Circuit Court for Lincoln County**
**No. C0500014     Lee Russell, Judge**

_____

**No. M2007-00339-COA-R3-CV - Filed March 31, 2008**

_____

In this legal malpractice action, the trial court denied the former client's motion to stay proceedings and granted summary judgment in favor of the attorney. The former client asserts on appeal that summary judgment was not proper because the underlying case in which the malpractice allegedly occurred is still pending, and therefore, damages cannot be established. We affirm the decision of the trial court.

**Tenn. R. App. P.3 Appeal as of Right; Judgment of the Circuit Court Affirmed**

ANDY D. BENNETT, J., delivered the opinion of the court, in which PATRICIA J. COTTRELL, P.J., M. S., and FRANK G. CLEMENT, JR., J., joined.

Larry E. Parrish, Memphis, Tennessee, for the appellant, Nancy J. Strong.

William S. Walton, Nashville, Tennessee, for the appellee, John H. Baker, III, Esq., and Bullock, Fly & Hornsby.

**OPINION**

John H. Baker, an attorney, represented Nancy J. Strong in an action filed against her in Lincoln County Chancery Court in March 2001 by Paul Braden, her former business associate. Mr. Braden sought the dissolution of two partnerships; in a counterclaim, Ms. Strong asked for the dissolution of a third implied partnership and alleged breach of contract and breach of fiduciary duty. The trial court awarded Ms. Strong 51% of the assets in two partnerships, found an implied partnership in a third business, Braden Construction, and awarded Ms. Strong a 25% interest in that partnership. The trial court denied Ms. Strong's motion for an accounting of Braden Construction. The court awarded capital credits to each party, resulting in Ms. Strong owing Mr. Braden

$153,576.94 out of her share of partnership funds. Ms. Strong thereafter retained new counsel. In September 2004, both Ms. Strong and Mr. Braden appealed the trial court's decision.[1]

Ms. Strong filed the instant legal malpractice action against Mr. Baker and his law firm, Bullock, Fly & Hornsby, on January 11, 2005. In her complaint, Ms. Strong alleged causes of action for negligence, breach of express contract, breach of implied contract, intentional misrepresentation, violation of the Tennessee Consumer Protection Act, and intentional infliction of emotional and mental distress. The complaint sets out numerous allegations of improper acts on the part of Mr. Baker, including allegations that he failed to raise alleged conflicts of interest of opposing counsel Whitney Stevens and Chancellor J.B. Cox, failed to raise an alleged breach of fiduciary duty by accountant Lori Barnes, failed to require complete discovery responses, failed to subpoena certain records and witnesses, failed to object to certain trial exhibits and proof that were damaging to Ms. Strong, failed to secure available records needed to provide the trial court with an accounting, failed to request an accounting of Braden Construction at trial, and erroneously opined that the trial court would allow evidence to be introduced after a deadline. According to Ms. Strong's complaint, Mr. Baker deviated from the applicable standard of care by failing to keep her informed about the case, failing to properly investigate the case, failing to adequately prepare the case, failing to timely file a lawsuit, failing to timely file documents with the court, undertaking to represent her in a matter he was not competent to handle, failing to associate with a lawyer competent to handle the case, failing to maintain "proper office procedures," failing to keep informed of relevant changes in the law, and failing to properly advise her regarding the statute of limitations period.

Ms. Strong went on to allege that, as a result of the defendants' acts and omissions, she suffered and continued to suffer "permanent and unnecessary physical pain, mental anguish, emotional distress, aggravation, anxiety, inconvenience" and had been "otherwise deprived of a quality of life to which Ms. Strong has a right." The complaint also sets out a list of damages, including the following: "[l]oss of wages, both past and future; [l]oss of employability; [s]evere mental and emotional injury; [i]nability to enjoy the normal pleasures of life; [l]oss of ability to function in society; [p]ayment of attorney fees and court costs." The defendants answered, denying any wrongdoing, and asserted a breach of contract counterclaim for unpaid attorney fees.

In April 2005, Ms. Strong served upon the defendants requests for the production of documents, requests for admissions, and written deposition questions. The trial court denied the defendants' motion to strike the counts alleging intentional misrepresentation, violation of the Tennessee Consumer Protection Act, and intentional infliction of emotional and mental distress and Ms. Strong's claim for punitive damages. In May 2005, the defendants filed a motion for a protective order regarding Ms. Strong's depositions upon written questions and a request for a discovery conference. A few weeks later, the court entered an agreed order setting out parameters for the taking of discovery, including the depositions of Ms. Strong and Mr. Baker. The order provided that all factual discovery was to be completed by November 15, 2005, and required Ms.

---

[1] Further information concerning this case can be found at *Braden v. Strong*, M2004-02369-COA-R3-CV, 2006 WL 369274 (Tenn. Ct. App. Feb. 16, 2006) (no Tenn. R. App. P. 11 application filed).

Strong to declare any experts by December 31, 2005, and the defendants to declare their experts by March 1, 2006.

On February 16, 2006, this court issued a decision in *Braden v. Strong*, affirming the judgment of the trial court in part and reversing and remanding in part for consideration of capital account adjustments, for a complete accounting of Braden Construction, and for consideration of Ms. Strong's claims for breach of contract and breach of fiduciary duty. *Braden v. Strong*, M2004-02369-COA-R3-CV, 2006 WL 369274 (Tenn. Ct. App. Feb. 16, 2006) (no Tenn. R. App. P. 11 application filed).[2]

On February 24, 2006, the defendants in this case moved for summary judgment on all of Ms. Strong's claims. In support of their motion, the defendants submitted a statement of undisputed facts, an affidavit of Mr. Baker, and portions of Ms. Strong's deposition testimony. After giving a detailed recitation and explanation of his actions in representing Ms. Strong, Mr. Baker stated in his affidavit: "In my professional opinion, my conduct complied with the applicable standard of professional practice for attorneys licensed in the State of Tennessee during the relevant period of time and nothing that I did, or did not do, negligently caused Ms. Strong any damages that would not have otherwise have [sic] occurred." Ms. Strong filed a motion for a stay of proceedings and a response in opposition to the defendants' motion for summary judgment based largely upon the argument that damages remained uncertain due to the continuing litigation in *Braden v. Strong*. Ms. Strong submitted an affidavit detailing her complaints concerning Mr. Baker's actions and omissions during his representation. The defendants replied that Ms. Strong had failed to establish a genuine issue of material fact. On August 10, 2006, Ms. Strong filed a supplement to her motion for a stay of proceedings and a new motion for mediation.

Ms. Strong filed the affidavits of two attorneys, Michael Richards and Patrick Ardis, on August 18, 2006. Mr. Richards stated, in pertinent part:

> Mr. Parrish [attorney for Ms. Strong] contacted me concerning providing this affidavit relating to the fact that an expert opinion would be premature in this legal malpractice case since the underlying case in which negligence of the Defendants was appealed and remanded to the chancery court for a new trial. In this regard, I have reviewed Plaintiff's motion for supplement to her motion for a protective order to stay proceedings and for mediation and the opinion of the Court of Appeals in *Braden v. Strong*, 2006 Westlaw, 369274 (Tenn. Ct. App., W. Sec., 2006). In light of the fact that the Court of Appeals remanded this case for rendering of an accounting and for a factual determination on the key issue of whether the Plaintiff gave her consent for the capital contributions by Braden, it would be impractical to render an expert opinion relating to legal malpractice since ultimately the Plaintiff may prevail in the underlying case and at this time the extent of Plaintiff's damages, if any, is unknown.

---

[2]Ms. Strong filed a Notice of Appeal in Underlying Case with this court on March 18, 2008. According to this notice, Ms. Strong has appealed the trial court's decision granting summary judgment and dismissing her case.

Mr. Ardis's affidavit includes the following statements:

> While I am able and willing to study what I am told is a voluminous record, including almost 2,000 pages of deposition testimony of the parties, I believe doing this would be premature and might prove to be wasteful at this time to do so.
>
> . . . .
>
> It would appear from the opinion of the Court of Appeals in *Braden v. Strong*, 2006 WL 369274 (Tenn. Ct. App., W.S. at Nashville, 2006), there might have been errors which prejudiced Ms. Strong, but whether these errors were the fault of the defendants or the fault of the trial judge will be more readily assessed after the retrial of the case. At this time it would be premature to review the record and to opine what was the cause of the damages to Ms. Strong.

After a hearing on August 23, 2006, the trial court entered an order on September 13, 2006, in which the court denied Ms. Strong's motion for stay and granted the defendants' motion for summary judgment, finding no genuine issues of material fact concerning Ms. Strong's claims. In its findings, the trial court stated that expert testimony was necessary to establish a breach of the standard of care; since there was no such testimony, the court determined that summary judgment was appropriate as to the counts of negligence, breach of express contract, and breach of implied contract. As to the remaining counts, the court found no sworn evidence sufficient to establish claims for fraud, deceptive practice, or outrageous conduct. Ms. Strong moved to alter or amend the judgment, and the trial court granted her motion with respect to the claims seeking relief for professional negligence; as to those claims, the motion for summary judgment was reinstated for a period of 45 days to allow Ms. Strong time to respond further. Ms. Strong submitted a memorandum of law in support of her motion to alter or amend, and the defendants filed a memorandum of law in opposition to the motion. Ms. Strong also filed, over the defendants' objections, depositions and hearing transcripts from *Braden v. Strong*.

Ms. Strong's motion to alter or amend was denied by the court at a hearing on January 10, 2007. The court found no basis to alter or amend its previous ruling and reaffirmed its order granting summary judgment.

On appeal, Ms. Strong assigns error to the trial court's denial of her motion to stay the proceedings and its grant of summary judgment in favor of the defendants.

**ANALYSIS**

I.

<u>Motion for stay</u>

The decision to grant or deny a motion to stay proceedings is entrusted to the sound discretion of the trial judge. *Sanjines v. Ortwein and Assocs., P.C.*, 984 S.W.2d 907, 909 (Tenn. 1998). Thus, the following principles apply:

> Under the abuse of discretion standard, a trial court's ruling "will be upheld so long as reasonable minds can disagree as to propriety of the decision made." *State v. Scott*, 33 S.W.3d 746, 752 (Tenn. 2000); *State v. Gilliland*, 22 S.W.3d 266, 273 (Tenn. 2000). A trial court abuses its discretion only when it "applie[s] an incorrect legal standard, or reache[s] a decision which is against logic or reasoning that cause[s] an injustice to the party complaining." *State v. Shirley*, 6 S.W.3d 243, 247 (Tenn. 1999). The abuse of discretion standard does not permit the appellate court to substitute its judgment for that of the trial court. *Myint v. Allstate Ins. Co.*, 970 S.W.2d 920, 927 (Tenn. 1998).

*Eldridge v. Eldridge*, 42 S.W.3d 82, 85 (Tenn. 2001). In determining whether the trial court abused its discretion, we must consider "(1) whether the decision has a sufficient evidentiary foundation; (2) whether the trial court correctly identified and properly applied the appropriate legal principles; and (3) whether the decision is within the range of acceptable alternatives." *Thompson v. Chafetz*, 164 S.W.3d 571, 574 (Tenn. Ct. App. 2004).

In a legal malpractice case, a plaintiff must demonstrate the elements of negligence: a duty of care, breach of the duty of care, injury or loss, and causation. *Horton v. Hughes*, 971 S.W.2d 957, 959 (Tenn. Ct. App. 1998). As to the denial of her motion to stay the proceedings, Ms. Strong's basic argument is that, until the *Braden v. Strong* litigation is over, she cannot establish a case of legal malpractice because she cannot prove damages. Ms. Strong relies heavily on *Carvell v. Bottoms*, 900 S.W.2d 23 (Tenn. 1995), a case concerning the accrual of a cause of action for legal malpractice.

In *Carvell*, the alleged legal malpractice involved attorney Bottoms' failure to properly draft a warranty deed for the Carvells, property owners who sold the property in 1981. *Id.* at 25. The purchaser of the property sued the Carvells in 1986 for breach of the warranty of good title. The jury found in favor of the purchasers, and the Court of Appeals affirmed the judgment. *Id.* In 1990, after the appeal was final and the attorney's firm refused to pay the judgment, the Carvells filed a malpractice action. *Id.* In upholding the trial court's grant of summary judgment in favor of the attorney and reversing the decision of the Court of Appeals, the Tennessee Supreme Court clarified when a cause of action for legal malpractice accrues for purposes of the statute of limitations. *Id.*

Under previous caselaw, the legal malpractice discovery rule required two elements: "(1) the plaintiff must suffer . . . an 'irremediable injury' as a result of the defendant's negligence; and (2) the plaintiff must have known or in the exercise of reasonable diligence should have known that this injury was caused by the defendant's negligence." *Id.* at 28. The Supreme Court rejected the Carvells' argument that their injury "was not yet 'irremediable' by May 23, 1989–a year before their malpractice action was filed–because they had not exhausted all possible appeals in the breach of warranty case." *Id.* at 29. The court also rejected the "irremediable injury" standard and held that a plaintiff must suffer a "legally cognizable injury" or "actual injury" as a result of the defendant's

negligence to meet the first prong of the discovery rule. *Id.* at 29-30. The Carvells contended that requiring a client to file a legal malpractice action while still defending the underlying lawsuit would force the client to take inconsistent positions in the two lawsuits. *Id.* at 30. The court responded that malpractice plaintiffs could avoid the uncomfortable position of maintaining inconsistent positions in different lawsuits "by filing a malpractice action against the attorney and requesting that the trial court stay that action until the underlying proceedings are concluded." *Id.*

It is the language in *Carvell* regarding the possibility of a stay upon which Ms. Strong bases her argument that the trial court should have stayed the malpractice proceedings until the conclusion of the *Braden v. Strong* litigation. In this case, however, there is no indication that Ms. Strong would be required to take conflicting positions in the two lawsuits. Furthermore, the court in *Carvell* did not state that a trial court would be *required* to grant a motion to stay. The procedural posture of Ms. Strong's case differs significantly from that contemplated by the Supreme Court in *Carvell*. The court in *Carvell* suggested that a plaintiff could file a malpractice lawsuit to avoid statute of limitations problems and then request a stay until the conclusion of the underlying proceedings. That is not what happened here. Ms. Strong filed her malpractice lawsuit in January 2005 and began efforts to depose Mr. Baker as early as February 2005. In May 2005, the court entered an agreed order regarding discovery, including deadlines for the declaration of experts. Only after the defendants filed a motion for summary judgment in February 2006 did Ms. Strong request a stay of the proceedings. In its findings, the trial court thus observed:

> The way counsel on both sides in this malpractice case did, or a case that involves malpractice claims among others, was to proceed with some rather extensive discovery without seeking a stay from this court. . . . So the question becomes is it appropriate now at this stage to enter a stay. . . . And having come as far as we have with the discovery process, I think it's appropriate for us to go ahead today and rather than stay the proceedings to deal with the issue of whether there is a breach of the standard of care or whether there's sufficient evidence of the standard of care and breach of the standard of care to proceed or to allow the plaintiff to proceed with the claim today or should summary judgment be granted.

The trial court also addressed Ms. Strong's argument that, by denying the stay, the court created a "conundrum" because she had to file the malpractice action to comply with the statute of limitations, but she could not survive the motion for summary judgment without proof of injury:

> I don't, with all due respect to Ms. Strong's counsel, I don't–I separate these issues of damages and malprac[tice]–and standard of care and violation–breach of the standard of care. I think we present them to juries as separate elements, and what we're talking about today is standard of care and breach of standard of care.

In their motion for summary judgment, the defendants asserted that Ms. Strong had not established a breach of the standard of care. The court did not dispose of Ms. Strong's negligence case on the basis that injury had not been shown.

Moreover, while the full extent of Ms. Strong's damages may not be known until the final resolution of the underlying lawsuit, she has sustained actual injury, as required under *Carvell*. *Carvell*, 900 S.W.2d at 28. In *John Kohl & Co. P.C. v. Dearborn & Ewing*, 977 S.W.2d 528 (Tenn. 1998), our Supreme Court stated:

> An actual injury occurs when there is the loss of a legal right, remedy or interest, or the imposition of a liability. . . . An actual injury may also take the form of the plaintiff being forced to take some action or otherwise suffer "some actual inconvenience," such as incurring an expense, as a result of the defendant's negligent or wrongful act.

*Id.* at 532 (citations omitted) (quoting *State v. McClellan*, 85 S.W. 267, 270 (Tenn. 1905)). The entry of an adverse judgment is often the "starter pistol for the running of the statute of limitations in litigation malpractice." *Cherry v. Williams*, 36 S.W.3d 78, 84-85 (Tenn. Ct. App. 2000). Court costs, delays, and attorney fees can constitute injury. *Carvell*, 900 S.W.2d at 29; *Chambers v. Dillow*, 713 S.W.2d 896, 898-99 (Tenn. 1986). As stated in *Hartman v. Rogers*, 174 S.W.3d 170, 174 (Tenn. Ct. App. 2005), "[i]f a legal injury has occurred, whether or not it is corrected later at the appellate level does not erase the fact that the injury had occurred in the first place."

Accordingly, Ms. Strong has sustained actual injury, including what she considers to be an adverse judgment and the inconvenience, attorney fees, and costs associated with appealing that judgment and instituting a malpractice action. In her complaint, Ms. Strong further alleges injury in the form of "permanent and unnecessary physical pain, mental anguish, emotional distress, aggravation, anxiety, inconvenience" as well as "[l]oss of wages, both past and future," "[l]oss of employability," "[s]evere mental and emotional injury," "[i]nability to enjoy the normal pleasures of life," and [l]oss of ability to function in society."[3] Because the case upon which Ms. Strong's malpractice action is based has not been fully litigated, the extent of her injuries is not known. However, Ms. Strong has alleged injury separate and apart from monetary loss due to the adverse judgment. Therefore, the purported conundrum does not exist.

In denying the stay, the court considered the posture of the case and applicable legal standards regarding proof of negligence. It is clear to this court that the trial court's denial of Ms. Strong's motion for a stay was not an abuse of discretion.

II.

Motion for summary judgment

Summary judgments do not enjoy a presumption of correctness on appeal. *BellSouth Adver. & Pub. Co. v. Johnson*, 100 S.W.3d 202, 205 (Tenn. 2003). This court must make a fresh determination that the requirements of Tenn. R. Civ. P. 56 have been satisfied. *Hunter v. Brown*, 955

---

[3]Our reference to these claims should not be interpreted as suggesting that the plaintiff is or is not entitled to recover damages for these injuries in a legal malpractice claim.

S.W.2d 49, 50 (Tenn. 1997). We consider the evidence in the light most favorable to the non-moving party and resolve all inferences in that party's favor. *Godfrey v. Ruiz*, 90 S.W.3d 692, 695 (Tenn. 2002). When reviewing the evidence, we must determine whether factual disputes exist. If a factual dispute exists, we must determine whether the fact is material to the claim or defense upon which the summary judgment is predicated and whether the disputed fact creates a genuine issue for trial. *Byrd v. Hall*, 847 S.W.2d 208, 211 (Tenn. 1993); *Rutherford v. Polar Tank Trailer, Inc.*, 978 S.W.2d 102, 104 (Tenn. Ct. App. 1998). Under Tenn. R. Civ. P. 56, the moving party must negate an element of the opposing party's claim or establish an affirmative defense. *Byrd*, 847 S.W.2d at 215, n.5.

Ms. Strong argues that the trial court erred in granting summary judgment with respect to her legal malpractice claim based upon the absence of any expert testimony that Mr. Baker's actions violated the applicable standard of care.[4]

It is well-settled law that, "[i]n a legal malpractice action, expert testimony is required to establish negligence and proximate cause unless the alleged malpractice is within the common knowledge of laymen." *Rose v. Welch*, 115 S.W.3d 478, 484 (Tenn. Ct. App. 2003). Only in cases involving "'clear and palpable negligence'" can legal malpractice be determined without expert testimony. *Id.* at 484 (quoting *Cleckner v. Dale*, 719 S.W.2d 535, 540 (Tenn. Ct. App. 1986)). Thus, except in extreme cases, if a defendant-attorney presents expert proof that he or she did not breach the duty of care, the plaintiff-client must present rebuttal expert proof that a breach of care did occur in order to create a genuine issue of material fact. *Bursack v. Wilson*, 982 S.W.2d 341, 343-45 (Tenn. Ct. App. 1998). We disagree with Ms. Strong's position that the defendants must establish the necessity of expert testimony. Rather, absent allegations of obvious negligence, expert evidence is required.

In this case, we do not find allegations of acts or omissions that constitute "clear and palpable negligence" within the common knowledge of a layperson. As outlined above, the underlying case involves the dissolution of two express partnerships and one implied partnership. Ms. Strong's complaint includes numerous allegations concerning supposed improprieties on the part of Mr. Baker. The allegations relate to matters of substantive and procedural law as well as litigation tactics and strategy. The appropriateness or legality of these actions is not within the knowledge of most nonlawyers. The trial court made the following relevant findings:

> I disagree that there's anything that is so obviously or patently malpractice that a layperson could conclude that it was malpractice without being told by any expert. I think expert testimony is required to tell a jury what argument an attorney should make to a Chancellor in order to get an accounting. I think it is necessary to have an expert testify to what the standard of care requires with regard to raising issues concerning the conflict of interest of an attorney, another attorney, or with regard to conflicts on interest on the part of an expert witness, for instance, an accountant. It

---

[4]On appeal, Ms. Strong has not contested the trial court's grants of summary judgment with respect to her other claims–breach of contract, misrepresentation, consumer protection violations, and infliction of emotional distress.

is just not the sort of thing a jury is going to know about or understand without the benefit of expert testimony, and it is absent in this particular case. . . . I don't think those are the things that can be evaluated by a jury without expert testimony, number one. Number two, I truly believe that we're in trial strategy there, and it is never appropriate to use 20/20 hindsight and say that one strategy should be used instead of another. That's not the standard. Only if the strategy used is a breach of the standard of care as established by expert testimony do you go forward with the malpractice claim.

Once Mr. Baker presented an affidavit stating that his conduct complied with the applicable standard of care, Ms. Strong was required to present expert testimony to overcome the motion for summary judgment. *See Bursack*, 982 S.W.2d at 343-44. Since Ms. Strong did not present any expert proof, the trial court properly granted the defendants' motion for summary judgment.

Ms. Strong also argues that the trial court's grant of summary judgment violated Article I, Section 17 of the Tennessee Constitution by denying her access to open courts in which to secure adjudication of claims. This argument is tied to her assertion, discussed above, that *Carvell* required her to file her malpractice action before she could prove damages, making it impossible for her to establish proof of injury as required for a negligence claim. As discussed above, we find no such "conundrum" to exist since Ms. Strong has alleged the requisite injury. Her motion for summary judgment was properly granted because of her failure to submit expert proof on the issues of the standard of care and breach of the standard of care.

The judgment of the trial court is affirmed in all respects. Costs of appeal are assessed against the appellant, for which execution may issue if necessary.

_____
ANDY D. BENNETT, JUDGE