# IN THE COURT OF APPEALS OF TENNESSEE
## AT KNOXVILLE
Assigned on Briefs January 8, 2014

## TIMOTHY W. HUDSON v. DELILAH M. GRUNLOH

**Direct Appeal from the Chancery Court for Sullivan County**
**No. B0021690C     E. G. Moody, Chancellor**

**No. E2013-01434-COA-R3-CV-FILED-MARCH 11, 2014**

This case involves a claim for contractual attorney fees and a counterclaim for legal malpractice. The trial court dismissed the legal malpractice claim at the summary judgment stage, it granted summary judgment on certain aspects of the attorney's fee claim, and, following a trial, it awarded a judgment in favor of the attorney. We affirm.

**Tenn. R. App. P. 3; Appeal as of Right; Judgment of the Chancery Court Affirmed**

ALAN E. HIGHERS, P.J., W.S., delivered the opinion of the Court, in which DAVID R. FARMER, J., and J. STEVEN STAFFORD, J., joined.

Delilah M. Grunloh, Johnson City, Tennessee, *pro se*

Timothy W. Hudson, Bristol, Tennessee, *pro se*

## OPINION

## I. FACTS & PROCEDURAL HISTORY

In June 2011, Max Wilson filed a Complaint seeking a divorce from his wife of approximately fourteen years, appellant Delilah Grunloh. Attorney Timothy Hudson agreed to represent Ms. Grunloh in her divorce, and on July 7, 2008, a fee agreement was executed. Attorney Hudson represented Ms. Grunloh from July 7, 2008 to September 8, 2009, when he was discharged by her.

No children were born of the marriage between Mr. Wilson and Ms. Grunloh, and the divorce proceedings focused upon the ownership of assets accumulated during the marriage. Ms. Grunloh had substantial mortgages on three residences, she and her husband were heavily in debt, and she was having difficulty paying the overhead in her liquor store business. During the divorce, Ms. Grunloh took the position that she was entitled to all property acquired during the marriage with the exception of a vacant lot. Mr. Wilson, however, claimed that he was an unnamed partner in the liquor store business, that he worked steadily in the liquor store business, and, therefore, that he was entitled to half of the equity in the liquor store business and real estate. Thus, the divorce case required appraisals on three residences and the liquor store and an analysis of the history of the liquor store business.

By agreed order, the case was set for trial on April 8, 2009. Trial was held over two days in April and May 2009 without decision. At the conclusion of trial, the trial court advised the attorneys to file briefs and to return to court at a later time. The case was continued, however, pending sales of the residences and the liquor store and due to a possible agreement between the parties as to the division of assets.

Ms. Grunloh hired a realtor to sell the properties and she hired an auctioneer to sell the contents of the main residence. An auction of the main residence's contents occurred on August 20, 2009; neither Ms. Grunloh nor Attorney Hudson attended the sale. Shortly thereafter, on September 8, 2009, Ms. Grunloh sent Attorney Hudson a letter terminating his representation based upon her dissatisfaction with the proceeds earned at the sale and his failure to attend such. Upon motion by Attorney Hudson, he was allowed to withdraw on October 21, 2009. On July 7, 2010, an order was entered dismissing the divorce case due to reconciliation.

On September 25, 2009, Attorney Hudson filed an Intervening Complaint in the chancery court alleging that Ms. Grunloh had failed to pay him as provided for in the fee agreement and claiming that she owed a balance of $17,063.75 for attorney fees and

litigation expenses. On November 17, 2009, Ms. Grunloh, acting pro se, filed her Answer to Intervening Complaint generally arguing that Attorney Hudson had not earned the fee claimed. Then, on December 28, 2009, Ms. Grunloh filed an Amended Answer and Counter Claim asserting a claim of legal malpractice against Attorney Hudson. Ms. Grunloh claimed that Attorney Hudson's "failure to rep[re]sent her at the [furnishings] sale[] . . . resulted in the [perpetration of] a fr[a]ud by selling her valuable household furnishings at a price substant[i]ally below true value." As damages, she sought "the difference in the value of the furnishings and the amount they were sold for at auction" as well as "pun[i]tive damages in the amount not to exceed $25,000.00." In her Amended Answer and Counter Claim, Ms. Grunloh demanded, for the first time, a jury trial on the issues of damages and attorney fees.

On April 9, 2010, Attorney Hudson filed a Motion for Summary Judgment along with a Statement of Material Facts in support thereof.[1] He requested that he be awarded a monetary judgment of $17,063.75, plus interest, on his claim for attorney fees and that Ms. Grunloh's claim for legal malpractice be dismissed. Also on April 9, Attorney Hudson filed his Affidavit with an attached itemization of time.[2] Attorney Hudson filed his Supplemental Affidavit noting an erroneous prior omission of 4.5 attorney hours, thus, leaving an unpaid principal balance of $17,963.75. He also filed a Supplemental Statement of Material Facts.

In June 2010, Ms. Grunloh filed a "Motion to Strike or Disregard Attorney Statement of Time" arguing, essentially, that the entire itemization should be struck because, among other things, she should not have been charged $200.00 per hour for travel or for telephone calls by Attorney Hudson, the 117 phone calls listed were unsupported by a "memo, phone log or billing statement[,]" because 55 phone calls were listed with other charges incurred on the days of the phone calls, she did not receive periodic billing statements, and because certain work was unnecessary. Ms. Grunloh also filed a Statement of Facts in Opposition to Motion for Summary Judgment.

Following a hearing on April 4, 2011,[3] the trial court entered an Order, on April 7, granting in part and denying in part, Attorney Hudson's motion for summary judgment. The trial court dismissed Ms. Grunloh's claim for legal malpractice stating:

---

[1] It appears that Attorney Hudson filed no memorandum in support of his motion for summary judgment.

[2] The itemization set out in detail the following charges: 122.35 attorney hours x $200.00 per hour = $24,470.00; 5 legal assistant hours x $75.00 per hour = $375.00; court reporter fee $75.00. The itemization listed the total fees and costs as $24,920.00 less $7,856.25 paid by Ms. Grunloh, for a balance due of $17,063.75.

[3] The record contains no transcript of this hearing.

The court finds that Mr. Hudson has filed a statement of material facts with his supporting affidavit establishing the standard for local practicing divorce attorneys, and that he complied with that standard, thereby negating an essential element of Ms. Grunloh's counterclaim for legal malpractice. Ms. Grunloh has filed no expert affidavit.

It then found no genuine issues of material fact as to the following issues:

a. The parties entered into a valid written contract for Mr. Hudson to represent Ms. Grunloh in this divorce;
b. The rate of $200 per hour recited in the contract was appropriate;
c. The $200 per hour rate includes travel and telephone time, and the contract provides for reimbursement of litigation expenses;
d. Mr. Hudson concedes that the blank of the contract for the hourly charge for legal assistant time was not completed and that the 5.0 hours of legal assistant time of $75 per hour for a total of $375.00 will not be sought[.]

However, it denied summary judgment on Attorney Hudson's fee claim finding "there is a genuine issue of disputed fact as to the accuracy of the itemization of time."

On December 21, 2012, the trial court entered an Order denying Ms. Grunloh's jury demand for two stated reasons:[4]

First, [Ms. Grunloh] did not demand a jury trial in her original answer to the intervening complaint, or 15 days thereafter as required by Rule 38.02, Tennessee Rules of Civil Procedure. Secondly, Ms. Grunloh in her amended answer and counterclaim asked for a jury trial only on the issue of damages sought in her counterclaim.[5] When there is a demand for a jury trial only on a specific issue, then the demand is limited to those issues. Rule 38.04, Tennessee Rules of Civil Procedure. Ms. Grunloh's counterclaim was dismissed by summary judgment. Therefore, even if Ms. Grunloh's demand for a jury trial for damages sought in the counterclaim could be considered timely, the jury trial demand did not survive dismissal of the counterclaim.

_____

[4]The December 21, 2012 order set aside an October 11, 2012 order which had granted Ms. Grunloh's demand for a jury.

[5]We find this statement curious as Ms. Grunloh's Amended Answer and Counter Claim demanded a jury trial "on the issue of damages" as well as an advisory jury on "[t]he issue of attorney fee[s.]" The jury trial issue will be addressed below.

A hearing was held on the remaining issues on January 9, 2013.[6] On February 20, 2013, the trial court entered its lengthy Findings of Fact and Conclusions of Law, in part, as follows:

1. The court previously found upon summary judgment that Ms. Grunloh's amended counterclaim for malpractice should be dismissed. The court also found and ruled that Mr. Hudson's motion for summary judgment should be granted in part. The court incorporates the findings and conclusions in that order. The court reaffirms the prior ruling that Ms. Grunloh entered into a valid contract for legal representation by Mr. Hudson in her divorce, that the hourly rate of $200 per hour in the contract was appropriate, the contract hourly rate did include travel, telephone calls, and reimbursement for litigation expenses, did not include legal assistant time, that the malpractice amended counterclaim should be dismissed as a matter of law, and the only remaining issue for trial was the accuracy of the time recorded on the billing statement and the reasonableness of the fee.

2. Mr. Hudson introduced itemization of his time through the testimony of his legal assistant, Ms. Isley, who has 20 years' experience. Ms. Isley testified that billing was prepared by the use of daily time logs which were transferred onto an Excel spreadsheet, from which the itemization of the statement was prepared. Ms. Isley also testified that in preparation for her testimony, she went back to the time log sheets to check her accuracy and found that the itemized statement was accurate except that she had actually under-billed Ms. Grunloh 2.5 hours which were not transferred to the Excel spreadsheet to the itemization of the bill. Mr. Hudson does not ask that the 2.55 hours be included. Furthermore, in the course of this litigation, Ms. Grunloh pointed out two additional court appearances that were not included in the itemization, and they have been now included and highlighted in bold for the dates of May 6, 2009, and May 20, 2009 in the itemization of time exhibit. Ms. Grunloh's objection and motion that the itemization is inadmissible hearsay is overruled. The itemization is clearly an admissible business record.

3. A total of 125.85 [hours] are recorded for attorney time, with a contract rate of $200 per hour, for a total amended bill of $25,170. The legal assistant time of $375 is not allowed as conceded by Mr. Hudson. There is an expense for a court reporter in the amount of $75. Ms. Grunloh has paid $7,856.25, leaving a balance of $17,588.75. Mr. Hudson seeks a judgment for that sum,

_____

[6]A Statement of the Evidence from this hearing is included in the appellate record.

plus interest at the contract rate of 12%, per year, not compounded.

4. In the court's prior order, Ms. Grunloh was directed to itemize her objections to Mr. Hudson's statement so the court may go through them at trial. Her objections are contained in her motion. Her objection that the statement was hearsay is overruled for the reasons stated above. Her second claim is that the attorney's fees are unreasonable and excessive. This claim will be discussed below. She further says that Mr. Hudson is not entitled to recover on a *quantum meruit* theory. This is overruled. Mr. Hudson does not seek recovery on a *quantum meruit* theory, but on his contract. She says Mr. Hudson failed to show proof that he put in his trust account her deposit of $5,000, that he should produce evidence that it went into his trust account, and that she never received any accounting. Ms. Isley testified the $5,000 went into the trust account. Ms. Isley testified that when she billed Ms. Grunloh twice during the course of representation, the itemization of Mr. Hudson's time was provided and all of Ms. Grunloh's payments were credited in the bill. Ms. Grunloh's deposit of $5,000 and an additional $2,856.25 she paid were credited. The court accepts Ms. Isley's testimony. Ms. Grunloh does not claim she paid more than credited.

5. Ms. Grunloh does not largely deny the accuracy of Mr. Hudson's reported time. Her criticisms are directed more to the manner in which the attorney's time was kept, and the overall reasonableness of the fee. For example, as to the 117 telephone calls shown on the statement, Mr. Grunloh did not deny the calls, but says they should have been listed separately and not included with other activity recorded on the same day. There is no requirement that the telephone calls and other legal work done on the same day has to be listed separately. The court finds Mr. Hudson's method of stating time was neither deceptive nor unreasonable. Ms. Grunloh objects to the time spent on a post-trial brief that was never filed as unreasonable. The court finds that the 8 ½ hours for preparing a brief that never was filed was reasonable, in that, the brief was ordered by the court and prepared, but not filed because the parties attempted to work out a disposition of their property before scheduling further court hearings. No further proceedings were scheduled because the parties reconciled, discharged their attorney, and dismissed their divorce claims.

6. Ms. Grunloh claims that the meeting Mr. Hudson had with attorney Tom Jessee was unnecessary. Mr. Jessee had referred Ms. Grunloh to Mr. Hudson to handle the divorce, and had been hired by Ms. Grunloh as to a potential fraud claim against Wells Fargo regarding the financing on Ms. Grunloh's

three houses. These houses were valuable marital property with significant debt and subject of the divorce proceedings. The charges for the meeting included automobile travel time roundtrip between Bristol and Johnson City, TN and a phone conference with Ms. Grunloh. The meeting was necessary and reasonable.

7. The court finds that Mr. Hudson's meetings and calls with the realtor of Ms. Grunloh, and with the attorney representing a prospective buyer of the liquor store were reasonable and necessary in that the disposition of the liquor store and Ms. Grunloh's houses were significant assets of the marital property in the divorce case. The court does not agree with Ms. Grunloh's objections to these charges.

8. Ms. Grunloh admits that she had no criticism of Mr. Hudson until just before she discharged him, that she told him and his assistant that he was doing a good job for her on multiple occasions, and that this was her opinion up until the agreed ordered auction of household furnishings and the failed closing of one of her homes. It was after these events in late August, 2009, several weeks after the divorce trial, that she changed her opinion. She stated that Mr. Hudson should have attended the auction, [and] stopped the auction when the furnishings did not bring an appropriate price. Ms. Grunloh, however, admits that she chose the auctioneer, that he had a good reputation, that she knew him, and that she did not attend the auction herself. Furthermore, she did not ask Mr. Hudson to attend the auction. The court does not find that Mr. Hudson was obligated to attend without being requested or [that he]could have done anything to stop a court-ordered auction because of low bidding. Ms. Grunloh does not blame Mr. Hudson for the failed closing of the attempted sale of a house. It was right after these events, however, that the parties discharged their attorneys, reconciled, and dismissed their divorce claims.

After setting out its findings of fact and conclusions of law, and considering the requisite factors, the trial court found "that both Mr. Hudson's contract for services and his charged fees, as amended, are reasonable." Based upon Mr. Hudson's failure to attend the auction, however, the trial court reduced Attorney Hudson's fee by $1,600. Thus, the trial court awarded Attorney Hudson $15,988.75, plus 12% prejudgment interest from October 1, 2009 to February 20, 2013, for a total of $22,495.46. A Final Judgment on Intervening Complaint was entered on February 20, 2013. Ms. Grunloh timely appealed.[7] She then filed a

_____

[7]A July 8, 2013 Order indicates that Ms. Grunloh was not served with the February 20, 2013
(continued...)

"Statement of Evidence and Proceedings" to which Attorney Hudson filed an objection and his own Statement of the Evidence. The trial court adopted Mr. Hudson's Statement of the Evidence as a "fair, accurate, and complete account of the evidence presented at the final hearing of January 9, 2013[.]"

## II. ISSUES PRESENTED

Ms. Grunloh presents the following issues for review, as we perceive them:

1. Whether the trial court erred in granting in part, Attorney Hudson's Motion for Summary Judgment related to the issues of legal malpractice and attorney fees;

2. Whether the trial court erred in denying Ms. Grunloh's demand for a jury trial regarding the accuracy of the time itemization;

3. Whether the trial court erred in accepting Attorney Hudson's Statement of the Evidence;

4. Whether the trial court erred in making certain factual findings related to billing statements, the deposit of the retainer fee in the trust account, and notice to Ms. Grunloh of the withdrawal of funds; and

5. Whether the trial court erred in finding Attorney Hudson's fee was reasonable.

For the following reasons, we affirm the decision of the chancery court.

## III. DISCUSSION

### A. Summary Judgment

1. Ms. Grunloh's Claim of Legal Malpractice

We first address Ms. Grunloh's apparent argument that the trial court erred in summarily dismissing her legal malpractice claim against Attorney Hudson. A grant or denial of summary judgment presents a question of law which we review *de novo* without

---

[7](...continued)
Findings of Fact and Conclusions of Law and Final Judgment on Intervening Complaint until May 20, 2013. Thus, Ms. Grunloh's June 13, 2013 Notice of Appeal was timely.

a presumption of correctness. *Kinsler v. Berkline, LLC*, 320 S.W.3d 796, 799 (Tenn. 2010) (citing *Blair v. W. Town Mall*, 130 S.W.3d 761, 763 (Tenn. 2004)).

A motion for summary judgment should be granted only "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." **Tenn R. Civ. P. 56.04**. "The party seeking the summary judgment has the burden of demonstrating that no genuine disputes of material fact exist and that it is entitled to a judgment as a matter of law." *Green v. Green*, 293 S.W.3d 493, 513 (Tenn. 2009) (citing *Martin v. Norfolk S. Ry.*, 271 S.W.3d 76, 83 (Tenn. 2008); *Amos v. Metro. Gov't of Nashville & Davidson County*, 259 S.W.3d 705, 710 (Tenn. 2008)).

"A moving party who seeks to shift the burden of production to the nonmoving party who bears the burden of proof at trial must either: (1) affirmatively negate an essential element of the nonmoving party's claim; or (2) show that the nonmoving party cannot prove an essential element of the claim at trial." *Hannan v Alltel Publ'g Co.*, 270 S.W.3d 1, 9, (Tenn. 2008) (footnote omitted). In order to negate an essential element of the claim, "the moving party must point to evidence that tends to disprove an essential factual claim made by the nonmoving party." *Martin*, 271 S.W.3d at 84 (citing *Blair*, 130 S.W.3d at 768). "It is not enough for the moving party to challenge the nonmoving party to 'put up or shut up' or even to cast doubt on a party's ability to prove an element at trial." *Hannan*, 270 S.W.3d at 8.[8] "If the moving party is unable to make the required showing, then its motion for summary judgment will fail." *Martin*, 271 S.W.3d at 83 (citing *Byrd v. Hall*, 847 S.W.2d 208, 215 (Tenn. 1993)).

If the moving party does make a properly supported motion, "[t]he non-moving party must then establish the existence of the essential elements of the claim." *McCarley v. West Quality Food Serv.*, 960 S.W.2d 585, 588 (Tenn. 1998). The nonmoving party is required to produce evidence of specific facts establishing that genuine issues of material fact exist. *Martin*, 271 S.W.3d at 84 (citing *McCarley*, 960 S.W.2d at 588; *Byrd*, 847 S.W.2d at 215). "The nonmoving party may satisfy its burden of production by: (1) pointing to evidence establishing material factual disputes that were over-looked or ignored by the moving party; (2) rehabilitating the evidence attacked by the moving party; (3) producing additional evidence establishing the existence of a genuine issue for trial; or (4) submitting an affidavit explaining the necessity for further discovery pursuant to Tenn. R. Civ. P. 56.06." *Id.* (citing *McCarley*, 960 S.W.2d at 588; *Byrd*, 847 S.W.2d at 215 n.6). "The nonmoving party's

---

[8]The Tennessee General Assembly has enacted a law that legislatively reverses the holding in *Hannan*. *See* Tenn. Code Ann. § 20-16-101. However, the statute applies only to cases filed on or after July 1, 2011. Thus, in this appeal, we apply the summary judgment standard set forth in *Hannan*.

evidence must be accepted as true, and any doubts concerning the existence of a genuine issue of material fact shall be resolved in favor of the nonmoving party." *Id.* (citing *McCarley*, 960 S.W.2d at 588).

A claimant alleging legal malpractice bears the burden of proving all of the essential elements of such claim. ***Horton v. Hughes***, 971 S.W.2d 957, 959 (Tenn. Ct. App. 1998). "In order to make out a prima facie legal malpractice claim, [the claimant] must present competent evidence showing (1) that the accused attorney owed a duty to the plaintiff, (2) that the attorney breached that duty, (3) that the plaintiff suffered damage, and (4) that the breach proximately caused the plaintiff's damage." *Id.* (citing *Lazy Seven Coal Sales, Inc. v. Stone & Hinds, P.C.,* 813 S.W.2d 400, 403 (Tenn. 1991); *Blocker v. Dearborn & Ewing*, 851 S.W.2d 825, 827 (Tenn. Ct. App. 1992)). "When determining whether a lawyer breached a duty, the question becomes whether the lawyer failed to exercise the degree of care, skill, and diligence commonly possessed and exercised by other attorneys practicing in the same jurisdiction." *Id.* (citing *Cleckner v. Dale*, 719 S.W.2d 535, 540 (Tenn. Ct. App. 1986)). "Except for obvious, common sense mistakes, establishing the applicable standard of care and determining whether a lawyer breached that standard require expert evidence." *Id.* (citing *Blocker*, 851 S.W.2d at 827; *Cleckner*, 719 S.W.2d at 540).

As stated above, the trial court found that Attorney Hudson's "statement of material facts with his supporting affidavit establish[ed] the standard for local practicing divorce attorneys, and that he complied with that standard, thereby negating an essential element of Ms. Grunloh's counterclaim for legal malpractice." It then found that Ms. Grunloh had failed to satisfy her burden of production because she did not file an expert affidavit indicating that Attorney Hudson had breached the standard of care.

On appeal, Ms. Grunloh seems to imply that the trial court erred in dismissing her legal malpractice claim because it wrongfully relied upon a memorandum opinion for its position that Ms. Grunloh was required to present an expert affidavit.

"It is well-settled law that, '[i]n a legal malpractice action, expert testimony is required to establish negligence and proximate cause unless the alleged malpractice is within the common knowledge of laymen.'" ***Strong v. Baker***, No. M2007-00339-COA-R3-CV, 2008 WL 859086, at *7 (Tenn. Ct. App. Mar. 31, 2008) *perm. app. denied* (Tenn. Oct. 27, 2008) (quoting *Rose v. Welch*, 115 S.W.3d 478, 484 (Tenn. Ct. App. 2003)). "Only in cases involving, ''clear and palpable negligence'' can legal malpractice be determined without expert testimony." *Id.* (citing *Rose*, 115 S.W.3d at 484; *Cleckner*, 719 S.W.2d at 540). "Thus, except in extreme cases, if a defendant-attorney presents expert proof that he or she did not breach the duty of care, the plaintiff-client must present rebuttal expert proof that a breach of care did occur in order to create a genuine issue of material fact." *Id.* (citing

*Bursack v. Wilson*, 982 S.W.2d 341, 343-45 (Tenn. Ct. App. 1998)). "[A]bsent allegations of obvious negligence, expert evidence is required." ***Id.***

In this case, Ms. Grunloh's allegation of legal malpractice is based upon Attorney Hudson's failure to attend the furnishings auction although Ms. Grunloh, herself, hired the auctioneer, she, along with the auctioneer, arranged for the auction, and she never asked Attorney Hudson to attend the auction. The allegation related to the scope of Attorney Hudson's representation does not constitute "clear and palpable negligence" within the common knowledge of a layperson . Thus, when Attorney Hudson presented his affidavit stating that his conduct complied with the applicable standard of care, he affirmatively negated an essential element of Ms. Grunloh's claim, and she was required to present expert testimony to meet her burden of production. ***See id.*** (citing *Bursack*, 982 S.W.2d at 343-44). Because she failed to do so, the trial court properly granted Attorney Hudson's motion for summary judgment dismissing Ms. Grunloh's claim for legal malpractice. ***See id.*** (affirming summary dismissal of a legal malpractice claim where the defendant presented an expert affidavit indicating compliance with the standard of care and the plaintiff failed to present expert testimony in response).

2. Attorney Hudson's Claim for Contractual Attorney Fees

Next, we address Ms. Grunloh's argument that the trial court erred in granting partial summary judgment on Attorney Hudson's claim for contractual attorney fees. As stated above, the trial court found no genuine issues of material fact as to the following issues:

a. The parties entered into a valid written contract for Mr. Hudson to represent Ms. Grunloh in this divorce;
b. The rate of $200 per hour recited in the contract was appropriate;
c. The $200 per hour rate includes travel and telephone time, and the contract provides for reimbursement of litigation expenses;
d. Mr. Hudson concedes that the blank of the contract for the hourly charge for legal assistant time was not completed and that the 5.0 hours of legal assistant time of $75 per hour for a total of $375.00 will not be sought;

Ms. Grunloh's appellate brief is not a model of clarity, but it appears that she challenges only the trial court's interpretation of the fee agreement to apply the $200 per hour fee to Attorney Hudson's telephone calls and to his travel time.[9] "Questions of contract

_____

[9]Ms. Grunloh also argues that the fee agreement "was silent as to any amount for the legal assistant."
(continued...)

-11-

interpretation are generally considered to be questions of law, and thus are especially well-suited for resolution by summary judgment." ***RCR Bldg. Corp. v. Pinnacle Hospitality Partners***, No. M2012-00286-COA-R3-CV, 2012 WL 5380587, at *7 (Tenn. Ct. App. Nov. 15, 2012) *perm. app. denied* (Tenn. Apr. 9, 2013) (quoting *Ross Prods. Div. Abbott Labs. v. State*, No. M2006-01113-COA-R3-CV, 2007 WL 4322016, at *2-3 (Tenn. Ct. App. Dec. 5, 2007)).

"'The cardinal rule for interpretation of contracts is to ascertain the intention of the parties and to give effect to that intention, consistent with legal principles.'" ***Maggart v. Almany Realtors, Inc.***, 259 S.W.3d 700, 703-04 (Tenn. 2008) (quoting *Bob Pearsall Motors, Inc. v. Regal Chrysler-Plymouth, Inc.*, 521 S.W.2d 578, 580 (Tenn. 1975)). "[O]ur task is to ascertain the intention of the parties based upon the usual, natural, and ordinary meaning of the contractual language." *Guiliano v. Cleo*, 995 S.W.2d 88, 95 (Tenn. 1999) (citing *Hamblen County v. City of Morristown*, 656 S.W.2d 331, 333-34; *Bob Pearsall Motors, Inc.*, 521 S.W.2d at 580)). "The interpretation should be one that gives reasonable meaning to all of the provisions of the agreement, without rendering portions of it neutralized or without effect." ***Id.*** (citing *Davidson v. Davidson*, 916 S.W.2d 918, 922-23 (Tenn. Ct. App. 1995)). "All of the contract provisions should be construed in harmony with each other, if possible, to promote consistency and avoid repugnancy between the various provisions in a single contract." ***Id.*** (citing *Guiliano*, 995 S.W.2d at 95).

The one-page fee agreement executed by the parties in this case provides in relevant part:

I agree to the following fee terms:
Hourly (See attached policy)                    $200.00 per/hr. Partner
                                                $_____ per/hr. Legal Assistant

Deposit:      $5,000_____            to be paid Wednesday 7/9 at 11:30_____
Flat:         $_____            to be paid _____
Contingent:   $_____            to be paid _____

---

[9](...continued)
However, we find this issue moot as Attorney Hudson agreed to deduct the $375.00 legal assistant fee from his claim. With the exceptions of time spent on the telephone and traveling, Ms. Grunloh apparently does not challenge the $200.00 per hour rate, in and of itself. She challenges the reasonableness of the *total* fee based upon the allegedly unsatisfactory results and the allegedly unnecessary time spent, but summary judgment was not granted as to these issues and they were considered at trial. For example, the trial court stated in its Findings of Fact and Conclusions of Law that after summary judgment was granted, "the only remaining issue for trial was the accuracy of the time recorded on the bill statement and the reasonableness of the fee."

The attached one-page policy, also signed by Ms. Grunloh, further provided, in pertinent part:

> [The law firm] calculates time to the nearest quarter hour. For example, if we discuss your case by telephone, you may be charged 1/4 hour whether we talk eight (8) minutes or twenty (20) minutes. We generally charge no time for very brief communications, and they may appear on your bill as "N/C" for no charge.
>
> You will be charged for all time spent on your case including, but not limited to, travel time, court waiting time, review of documents, research, correspondence, communications with adverse counsel, interviewing witnesses, client conferences, hearings and trials.

On appeal, Ms. Grunloh argues that the $200.00 per hour fee should not be applied to Attorney Hudson's time spent traveling and on the telephone because, although the attached policy indicated that she would be charged for such time spent, "[t]here was no amount stated for either telephone or travel expenses." We reject this argument. The first page of the fee agreement states that Ms. Grunloh will be charged $200.00 per attorney hour as further explained in the attached policy. Such policy clearly explains that Ms. Grunloh will be charged for Mr. Hudson's time spent on the telephone and for "travel time." Noticeably absent from the policy is any deviance from the $200.00 per hour rate stated on page one. Construing both pages together, it is clear, as a matter of law, that the parties intended Attorney Hudson to charge telephone and travel time at the $200.00 per hour rate. The trial court's grant of summary judgment on this issue is affirmed.

### B. Demand for Jury Trial

As stated above, the trial court found that a genuine issue of disputed fact existed as to the accuracy of Attorney Hudson's itemization of time. However, it denied Ms. Grunloh's demand for a jury trial on this issue based, in part, upon her failure to demand a jury trial in her original answer to the Intervening Complaint, or 15 days thereafter as required by Rule 38.02, Tennessee Rules of Civil Procedure.

On appeal, Ms. Grunloh argues that she should have been afforded a jury trial "regarding the accuracy of the itemization of time." She asserts that she could not have demanded a jury within 15 days of Attorney Hudson's September 24, 2009 Intervening Complaint because his itemization of time was not filed until April 12, 2010.

"The right to trial by jury is constitutional and jealously guarded." *Realty Ass'n v.*

***Richter/Dial Builders, Inc.***, No. M1997-00168-COA-R3-CV, 2000 WL 146381, at \*6 (Tenn. Ct. App. Feb. 11, 2000) (citing *Caudill v. Mrs. Grissoms Salads, Inc.*, 541 S.W.2d 101 (Tenn. 1976)). However, a party must demand a jury trial in accordance with the provisions of Tennessee Rule of Civil Procedure 38.02 which provides: "Any party may demand a trial by jury of any issue triable of right by jury by demanding the same in any pleading specified in Rule 7.01[10] or by endorsing the demand upon such pleading when it is filed, or by written demand filed with the clerk, with notice to all parties, within fifteen (15) days after the service of the last pleading raising an issue of fact." **Tenn. R. Civ. P. 38.02**.

In this case, Attorney Hudson filed his Intervening Complaint on or about October 6, 2009, alleging that Ms. Grunloh had "breached her obligation under the [fee agreement]" and that she owed him "$17,063.75 for attorney's fee and litigation expenses." Ms. Grunloh filed her Answer on November 17, 2009 alleging that Attorney Hudson had protracted the litigation in order to inflate his fee and generally denying that Attorney Hudson had earned the fee sought in his Intervening Complaint. On December 28, 2009, Ms. Grunloh filed an Amended Answer and Counterclaim asserting a claim of legal malpractice and, for the first time, demanding a jury trial on the issue of attorney fees. Attorney Hudson filed his itemization of time on April 9, 2010.

We find untenable Ms. Grunloh's argument regarding the timeliness of her jury demand. She argues that she could not demand a jury trial as to the issue of attorney fees until she saw a break-down of his charges via the April 9, 2010 itemization of time. However, the issue of attorney fees was raised in Attorney Hudson's October 2009 Intervening Complaint, and she demanded a jury trial on the issue of attorney fees in December 2009, four months *before* the itemization of time was filed. Because Ms. Grunloh failed to comply with Rule 38.02, we affirm the trial court's denial of a jury trial on the issue of attorney fees.[11]

## C.  Statement of the Evidence

---

[10]Rule 7.01 pleadings include complaint, answer, reply to a counterclaim, answer to a cross-claim, third-party complaint when proper under Rule 14, and third-party answer when a third-party complaint is served.

[11]We note that Tennessee Rule of Civil Procedure 39.02 gives the trial court discretion to grant a jury trial "'even though the moving party had not made a timely demand for a jury as required by Rule 38.'" ***Marion v. Bowling***, 1999 WL 1059670, at \* (Tenn. Ct. App. Nov. 22, 1999) (quoting *Smith v. Williams*, 575 S.W.2d 503, 505 (Tenn. Ct. App. 1978)). This decision is, of course, discretionary, and in any event, Ms. Grunloh does not raise Rule 39.02 as a vehicle for relief on appeal.

Next, Ms. Grunloh asserts an argument related to the statements of evidence filed in this case.  As explained above, Ms. Grunloh filed a Statement of the Evidence to which Attorney Hudson timely filed an objection and his own Statement of the Evidence.  The trial court, in a September 24, 2013 Order, adopted Mr. Hudson's statement as a "fair, accurate, and complete account of the evidence presented at the final hearing of January 9, 2013[.]"

Ms. Grunloh raises as an issue on appeal, whether the trial court "erred in granting [Attorney Hudson's] motion allowing him to file two (2) statements in the record by order entered September 24, 2013."  In her brief, she argues:

> [Attorney Hudson] filed a response (objection) to [Ms. Grunloh's] Statement of Evidence [] alleging that its contents were unfair, inaccurate and not a complete account of the evidence at the final hearing. [Attorney Hudson] also attached two (2) statements attributed to Grunloh and Ms. Isley.

> [Attorney Hudson] did not state a single ground in support of his contention that [Ms. Grunloh]'s statement was unfair, inaccurate and not a complete account of the evidence from the final hearing seven months earlier.

What Ms. Grunloh's characterizes as two attached statements appears to be the summary of testimony included within Attorney Hudson's Statement of the Evidence.

Rule 24 of the Tennessee Rules of Appellate Procedure provides in relevant part:

> **(c) Statement of the Evidence When No Report, Recital, or Transcript Is Available**.  If no stenographic report, substantially verbatim recital or transcript of the evidence or proceedings is available, the appellant shall prepare a statement of the evidence or proceedings from the best available means, including the appellant's recollection.  The statement should convey a fair, accurate and complete account of what transpired with respect to those issues that are the bases of appeal.  The statement, certified by the appellant or the appellant's counsel as an accurate account of the proceedings, shall be filed with the clerk of the trial court within 60 days after filing the notice of appeal.  Upon filing the statement, the appellant shall simultaneously serve notice of the filing on the appellee, accompanied by a short and plain declaration of the issues the appellant intends to present on appeal.  Proof of service shall be filed with the clerk of the trial court with the filing of the statement.  *If the appellee has objections to the statement as filed, the appellee shall file objections thereto with the trial court within fifteen days after service of the declaration and notice of the filing of the statement.*  Any differences regarding the statement shall be settled as set forth in subdivision (e) of this rule.

. . . .

**(e) Correction or Modification of the Record.**  If any matter properly includable is omitted from the record, is improperly included, or is misstated therein, the record may be corrected or modified to conform to the truth.  *Any differences regarding whether the record accurately discloses what occurred in the trial court shall be submitted to and settled by the trial court regardless of whether the record has been transmitted to the appellate court.  Absent extraordinary circumstances, the determination of the trial court is conclusive.*  If necessary, the appellate or trial court may direct that a supplemental record be certified and transmitted.

**Tenn. R. App. P. 24** (emphasis added).

In this case, Attorney Hudson followed the procedure set forth in Rule 24; he timely objected to Ms. Grunloh's Statement of the Evidence and he filed his own Statement of the Evidence.  The trial court reconciled the two statements by adopting Attorney Hudson's version of the proceedings.  Ms. Grunloh has alleged no "extraordinary circumstances" which would warrant overruling this otherwise conclusive determination.  The trial court's approval of Attorney Hudson's Statement of the Evidence is affirmed.

### E.  Factual Findings

In her appellate brief, Ms. Grunloh challenges factual findings made by the trial court related to billing statements, the deposit of the retainer fee into a trust account, and notice to her of the retainer fee's withdrawal.  Specifically, with regard to these issues, the trial court found:

[Ms. Grunloh] says Mr. Hudson failed to show proof that he put in his trust account her deposit of $5,000, that he should produce evidence that it went into his trust account, and that she never received any accounting.  Ms. Isley testified the $5,000 went into the trust account.  Ms. Isley testified that when she billed Ms. Grunloh twice during the course of representation, the itemization of Mr. Hudson's time was provided and all of Ms. Grunloh's payments were credited in the bill.  Ms. Grunloh's deposit of $5,000 and an additional $2,856.25 she paid were credited.  The court accepts Ms. Isley's testimony.  Ms. Grunloh does not claim she paid more than credited.

We review a trial court's findings of fact *de novo* on the record and presume them to be correct unless the evidence preponderates otherwise.  **Tenn. R. App. P. 13(d)**; *Armbrister*

-16-

*v. Armbrister*, 414 S.W.3d 685, 692 (Tenn. 2013) (citations omitted). When the trial court's determinations are based on its assessment of witness credibility, we will not reevaluate those determinations absent clear and convincing evidence to the contrary. ***Jones v. Garrett***, 92 S.W.3d 835, 838 (Tenn. 2002).

On appeal, Ms. Grunloh challenges the finding regarding billing statements being sent to Ms. Grunloh because, she claims, the itemization of time did not "state[] that any item was prepared, delivered, mailed or otherwise sent to Grunloh."[12] According to the Statement of the Evidence approved by the trial court, "[Ms. Isley] . . . testified that not only did she mail Ms. Grunloh[] the itemized statements, but when Ms. Grunloh came to the office to make a payment that she gave her a copy of the most current itemized statement. She believes that happened on at least two occasions." In its Findings of Fact and Conclusions of Law, the trial court specifically credited Ms. Isley's testimony.

In her brief, Ms. Grunloh challenges the findings regarding the deposit of the retainer fee and the notice of withdrawal[13] by pointing out that she testified that she received no proof from Attorney Hudson that the money was deposited, by noting that the itemization of time contained no entry concerning a deposit or notice, and by arguing, without further explanation, that "Ms. Isley's testimony is not trustworthy and should not have been considered by the court." The Statement of the Evidence adopted by the trial court does not mention deposit of the retainer fee, but it implies that Ms. Isley testified that Ms. Grunloh was notified when withdrawals were made from such fee.

Assuming, *arguendo*, that these challenged factual findings are even pertinent to the issues on appeal,[14] we find Ms. Grunloh's challenges are without merit. After reviewing the record before us, particularly the trial court's accreditation of Ms. Isley's testimony, we have determined that the evidence does not preponderate against the trial court's findings related to billing statements, the deposit of the retainer fee into trust, or notice to Ms. Grunloh of the

---

[12]Ms. Grunloh argues that Ms. Isley's testimony was hearsay. However, this argument is raised regarding Ms. Isley's ability to testify as to the accuracy of the itemization of time, and not with regard to the challenged factual findings.

[13]The Rules of Professional Conduct require a lawyer to "deposit into a client trust account legal fees and expenses that have been paid in advance, to be withdrawn by the lawyer only as fees are earned or expenses incurred." **Tenn. Sup. Ct. R. 8, RPC 1.15(c)**. A comment further provides that "[w]hen the lawyer earns the fee, the funds shall be promptly withdrawn from the client trust account, and timely notice of the withdrawal of funds should be provided to the client. **Tenn. Sup. Ct. R. 8, RPC 1.15 Cmt. 10**.

[14]It is unclear whether Ms. Grunloh made these allegations in support of her claim of legal malpractice or in defense of Attorney Hudson's fee claim.

retainer fee's withdrawal.

### F. Reasonableness of Attorney Hudson's Fee

Finally, we address Ms. Grunloh's apparent claim that the trial court erred in finding Attorney Hudson's fee was reasonable.[15] We review a trial court's determination regarding the reasonableness of an attorney fee under the abuse of discretion standard. *Coleman v. Coleman*, No. W2012-02183-COA-R3-CV, 2013 WL 5308013, at *11 (Tenn. Ct. App. Sept. 19, 2013). "A trial court's determination on the reasonableness of fees is 'a subjective judgment based on evidence and the experience of the trier of fact'; there is 'no fixed mathematical rule' for determining what a reasonable fee is." *Id.* (quoting *United Med. Corp. of Tenn., Inc. v. Hohenwald Bank & Trust Co.*, 703 S.W.2d 133, 137 (Tenn. 1986); *Killingsworth v. Ted Russell Ford, Inc.*, 104 S.W.3d 530, 534 (Tenn. Ct. App. 2002)). "On appeal, '[w]e presume that the trial court's discretionary decision is correct, and we consider the evidence in a light most favorable to the decision.'" *Id.* (quoting *Wright ex rel. Wright v. Wright*, 337 S.W.3d 166, 176 (Tenn. 2011)). "'[W]e will find an abuse of discretion only if the court 'applied incorrect legal standards, reached an illogical conclusion, based its decision on a clearly erroneous assessment of the evidence, or employ[ed] reasoning that causes an injustice to the complaining party.'" *Id.* (quoting *Konvalinka v. Chattanooga-Hamilton County Hosp. Auth.*, 249 S.W.3d 346, 358 (Tenn. 2008)).

Again, the record contains no transcript from the proceedings below. Relevant to attorney fees, the Statement of the Evidence provides:

> Ms. Isley testified that a total of 125.85 [hours] are recorded for attorney time, with a contract rate of $200 per hour, for a total of $25,370 for attorney time. . . . Ms. Isley further testified that Ms. Grunloh required frequent attention, calling nearly every day for months, showing up without appointments to drop off documents and/or requesting to speak with Mr. Hudson[.]

Additionally, Attorney Hudson's affidavit indicates that he has been licensed as an attorney since 1981 and that, since 1985, when he began practicing in the area of domestic relations, he has "been lead counsel in hundreds of divorce cases[.]" His affidavit states that he represented Ms. Grunloh for fifteen months and it characterizes Ms. Grunloh's divorce case as "complex[,]" noting that "[s]he had substantial mortgages on three residences, she and her

---

[15]Ms. Grunloh frames the issue as whether "[t]he Court erred in awarding plaintiff a judgment and prejudgment interest for the work plaintiff claimed he did." However, her argument in regard to this issue relates to reasonableness. She makes no argument that, if the principal award is upheld, the award of prejudgment interest should be reversed.

husband were heavily in debt, and she was having trouble paying the overhead in her liquor store business." The affidavit notes that "[t]he case required appraisals on three residences and the liquor store, real estate, and an analysis of the history of the liquor store business." It explains the divorcing parties' conflicting positions which led to a "hotly contested trial"; Ms. Grunloh claimed that "all marital property was hers except for a vacant lot" while Mr. Wilson's position was that he was a partner in the liquor store business and, thus, that he was entitled a portion of the business. Further, it states that, upon Ms. Grunloh's request, Attorney Hudson "expedite[d]" a draft order allowing the furnishings auction to take place.

On appeal, Ms. Grunloh challenges Attorney Hudson's fee by arguing that the fee is excessive when compared to the results obtained. She states that "[t]here were no results of any kind other than a tremendous loss at the sale of Grunloh's antiques."[16] She also challenges the fee's reasonableness based upon the purported simplicity of the case. She points out that "aside from the issue of divorce the single issue concerned the interest of the parties in the real estate and package store business. There were no issues of child custody and support or alimony of any kind." Finally, she makes specific challenges to the charge of $200 per hour for Attorney Hudson's telephone conversations and his travel time, and to his recovery of $1,700 for the preparation of a brief which, she claims, was not filed until after Attorney Hudson's discharge.

When determining the reasonableness of an attorney's fee, the trial court must look to the non-exclusive factors set out in Rule 1.5(a) of the Tennessee Rules of Professional Conduct:

(1) the time and labor required, the novelty and difficulty of the questions involved, and the skill requisite to perform the legal service properly;

(2) the likelihood, if apparent to the client, that the acceptance of the particular employment will preclude other employment by the lawyer;

(3) the fee customarily charged in the locality for similar legal services;

(4) the amount involved and the results obtained;

(5) the time limitations imposed by the client or by the circumstances;

(6) the nature and length of the professional relationship with the client;

___

[16]Ms. Grunloh also seems to challenge the $375 legal assistant fee, but, as stated above, this fee was deducted from Attorney Hudson's award.

(7) the experience, reputation, and ability of the lawyer or lawyers performing the services;

(8) whether the fee is fixed or contingent;

(9) prior advertisements or statements by the lawyer with respect to the fees the lawyer charges; and

(10) whether the fee agreement is in writing.

**Tenn. Sup. Ct. R. 8, RPC 1.5(a)**.

In determining that Attorney Hudson's fee was reasonable, the trial court considered, and made express findings, as to each of the above-listed factors:

(1.) The court finds that this was a complex case, involving multiple residences with significant debt and a liquor store business. After two days of contentious trial, the court requested the parties to file briefs due to the difficulty of the questions involved. The contentiousness was, in part, over whether the liquor store business was a partnership of the parties or solely owned by Ms. Grunloh, and Ms. Grunloh's claims that her husband was an alcoholic who did not positively contribute to the marital estate and deserved nothing. . . . Experience and skill were necessary to perform legal services for Ms. Grunloh in her divorce case.

(2.) The acceptance of Ms. Grunloh's case would not preclude Mr. Hudson from accepting other employment.

(3.) Mr. Hudson's fee of $200 per hour is within the customary range in this locality for legal services similar to that needed in this case, and for an attorney of Mr. Hudson's skill and experience.

(4.) The court finds that the total attorney's fees of $25,370.75 were not unreasonable given the complexity and contentiousness of the case, extensive preparation, discovery, trial, and post-trial proceedings.

(5.) Ms. Grunloh testified that she wanted her divorce litigation to proceed as quickly as possible, and Mr. Hudson did not proceed quickly enough. The court does not find the process was delayed by Mr. Hudson, and, in fact, the parties reconciled after discharging their attorneys.

(6.) Ms. Grunloh hired Mr. Hudson on July 9, 2008, and she discharged him on September 8, 2009. Ms. Isley testified that Ms. Grunloh required frequent attention, calling nearly every day showing up without appointments to drop off documents and/or to speak with Mr. Hudson, that Ms. Grunloh referred at least one client to Mr. Hudson, that she was complimentary of Mr. Hudson, that Ms. Grunloh had no complaint about his fee, that she never questioned the billing statement, and Ms. Grunloh's opinion of Mr. Hudson did not change until after the auction, the failed closing and she reconciled with her husband. The case involved extensive discovery, preparation, research, mediation, two days of trial, and post-trial work.

(7.) Mr. Hudson is experienced, respected and an effective advocate well known to the court. His affidavit of his experience is filed.

(8.) The fee is hourly.

(9.) There was no evidence of any prior advertisement or statements by Mr. Hudson's fees as [to] what he normally charges.

(10.) The fee agreement was in writing, including a billing policy addendum that explained how he would keep his time, and the interest rate of 12% per year which Ms. Grunlow signed.

After reviewing the record in this case, we cannot say that the trial court abused its discretion in finding Attorney Hudson's fee was reasonable. The evidence presented indicates that Ms. Grunloh's divorce involved a complicated implied partnership issue, that Ms. Grunloh and Attorney Hudson agreed to a $200 per hour rate including telephone communications and travel time and that this rate was customary within the locality, that the time expended was necessary and reasonable, that the delay in filing the brief was due to a continuation of the proceedings, and that the divorce case was concluded without decision simply because the parties reconciled. The judgment against Ms. Grunloh for attorney fees is affirmed.

## IV. CONCLUSION

For the aforementioned reasons, we affirm the decision of the chancery court. Costs of this appeal are taxed to Appellant, Delilah M. Grunloh, for which execution may issue if necessary.

_____
ALAN E. HIGHERS, P.J., W.S.